Matthew Shayefar (Cal. SBN. 289685)
matt@shayefar.com
Law Office of Matthew Shayefar, PC
750 N. San Vicente Blvd, 800 West
West Hollywood, California 90069
Tel: 323-948-8101

Valentin Gurvits (MA Bar No. 643572) *phv forthcoming*
vgurvits@bostonlawgroup.com | Tel: 617-928-1804
Frank Scardino (MA Bar No. 703911) *phv forthcoming*
frank@bostonlawgroup.com | Tel: 617-928-1805
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459

*Attorneys for Plaintiff CreativeCode Ltd*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CREATIVECODE LTD.<br>    Plaintiff,<br><br>v.<br><br>DOES 1-20<br><br>    Defendants. | CASE NO.   5:23-cv-3832<br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

This is an action for violation of 17 U.S.C. §512(f), Intentional Interference with Prospective Economic Advantage, and violation of the California Unfair Competition Law, wherein Plaintiff CreativeCode Ltd. ("Plaintiff") seeks damages and other relief for the actions committed and/or omitted by the above listed Defendants.  Defendants have been sending fraudulent Digital Millenium Copyright Act ("DMCA") takedown notices to Google LLC and/or its affiliates ("Google"), wherein Defendants falsely allege that they own the copyrights at issue

(or are authorized by the owner), that Plaintiff's websites infringe on the referenced work, and that Plaintiff's website utilized anti-circumvention technology prohibited by the DMCA, when that is not the case and Defendants know well that this is not the case.  This has caused Google to either delist or downgrade Plaintiff's websites' search results on its search engine, resulting in greatly reduced traffic to Plaintiff's websites and causing Plaintiff significant damages.

All allegations made herein are upon personal information as to Plaintiff's own activities, and upon information and belief as to the activities of all others referenced.

## PARTIES

1. Plaintiff CreativeCode Ltd. is an Anguilla limited company with a registered office address of Anguilla, Hansa Bank Building - 1st Floor Landsome Road, The Valley, Anguilla, British West Indies.  Plaintiff has no shareholders, officers, or employees in the United States.

2. Defendants Does 1-20 are yet-to-be-identified individuals who are the owners and operators of several websites that have been sending fraudulent DMCA notices to Google falsely alleging that Plaintiff's websites contain prohibited anti-circumvention technology and are infringing on Defendants' copyrights.

3. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 20, and therefore sues these defendants by fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each of the fictitiously named defendants is negligently or otherwise responsible in some manner for the occurrences herein alleged, and Plaintiff's damages as herein alleged were legally and proximately caused by the acts and/or omissions of the fictitiously named defendants.  As used

herein, "Defendants" means all the fictitiously named defendants, and any defendants that may be later named.

## JURISDICTION AND VENUE

4.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, federal question jurisdiction, because Plaintiff alleges Defendants violated 17 U.S.C. § 512(f).

5.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the fraudulent DMCA take down notices were sent to Google, which is headquartered in Mountain View, Santa Clara County, California, which is within this District.

6.  *Divisional Assignment.*  Pursuant to L.R. 3-2(d) and 3-5(b), this case should be assigned to the San Jose Division because Defendants committed their wrongful actions by sending fraudulent takedown notices to Google in Santa Clara County which is within the San Jose Division.

## FACTS

7.  Plaintiff owns and operates certain websites with the URLs of "y2mate.nu" and "ytmp3.nu" (the "Websites").

8.  The Websites allow users to save the audio tracks from online videos to their computers without necessarily saving the video content as well.

9.  The functionality of the Websites is content neutral and there are substantial non-infringing reasons why users want to use the Websites, such as the fact that many publishers put out videos free from copyright and invite users to freely download and copy their work.  There are other examples, such as professors or students who might choose to download the audio portions of lectures for later reference and playback; bands that may want to capture the audio tracks from their live performances that they have captured on video; parents that may want the audio portion of a school concert that they recorded; or any other number of other non-infringing

uses and fair uses.

10. Starting on or about June 27, 2023, Defendants began to submit fraudulent DMCA notices to Google, falsely alleging that the Websites were infringing on copyrights held by Defendants (or that Defendants were authorized to act on account of the copyright holders) and that the Websites implemented software that circumvented technologic barriers regarding copyright. As of the date hereof, Defendants have sent scores of fraudulent DMCA notices to Google regarding the Websites (the "DMCA Notices").

11. When a DMCA notice is sent to Google, Google may "delist" or "downrank" the allegedly infringing URL(s) referenced in the DMCA notice. When Google delists or downranks a URL, this means that the URL either will not come up in a Google search (delisting) or comes up significantly further down in the Google search results (downranking), making it far less likely that a user clicks on a link to a website from a Google search result.

12. Indeed, one analysis has reported that *less than one percent* of Google searchers clicked on a web link from the second page of Google search results.[1]

13. On account of Defendants sending the fraudulent DMCA Notices to Google, Google delisted or downranked the Websites.

14. Google delisting or downranking the Websites significantly reduced traffic to the Websites. Indeed, Plaintiff has noticed a striking decrease in visits to the Websites, by approximately hundreds of thousands of clicks per day, since Defendants began sending the fraudulent DMCA Notices.

15. Plaintiff monetizes the Websites by selling space on its Websites to advertisers to display their advertisements. The amount that advertisers pay Plaintiff to display their ads on the

---

[1] *See* https://backlinko.com/google-ctr-stats.

Websites is directly tied to the volume of traffic that the Websites receive. Therefore, Plaintiff received, or will receive, significantly reduced advertising revenue on account of the fraudulent DMCA Notices.

16. Moreover, given the great volume of fraudulent DMCA Notices sent by Defendants, it is an expensive and time-consuming activity to respond and provide counter-notifications under the DMCA for each DMCA Notice, to the extent that Google even considers counter-notifications for the same.

### The DMCA Notices are Fraudulent

17. A proper DMCA notice must contain, *inter alia*, a signature of the right holder, or the person authorized to act on behalf of the rights holder, an identification of the copyrighted work in question, and a statement made under the pains and penalties of perjury that the submitter has a good faith and reasonable belief that its rights are being infringed, and that the statements made in the notice are accurate. (*See*, 17 U.S.C. §512(c)(3)).

18. The DMCA Notices sent by Defendants were fraudulent for at least three reasons: (a) the Defendants were not copyright holders (or the person authorized by the rights holder to send DMCA notices); (b) the Defendants falsely alleged that the Websites infringed on copyrights and falsely alleged that the Websites implemented anti-circumvention technology barred by the DMCA; and (c) the DMCA Notices otherwise failed to comply with DMCA requirements, such as listing the purported rights holder or the work in question.

19. It is obvious that Defendants were not the rights holders of the copyrighted works listed on the DMCA notices. This was clear because on dozens of occasions the DMCA Notices referenced prominent works, but then listed small or obscure entities as the copyright holder (or its authorized representative) for prominent and well-known works. Some DMCA Notices also failed to reference any rights holder at all.

20.     For instance, in a DMCA Notice submitted on July 28, 2023 against one of Plaintiff's Websites, the Defendant identified as "End Of YouTube Converter" (from the DMCA Notice posted to the Lumen database) alleged that it was authorized to send a DMCA notice with respect to Rick Astley's 1987 hit, "Never Gonna Give You Up."[2]  A copy of this DMCA Notice from the Lumen database is attached hereto as Exhibit 1.  It is clear that "End Of YouTube Converter" does not own the copyright to "Never Gonna Give You Up" (and is not otherwise authorized by the actual rights holder).  Instead, the copyrights for "Never Gonna Give You Up" are held by All Boys Music, Ltd., for the words and music, and BMG Music for the sound recording of Rick Asley's performance on the 1987 record *Whenever You Need Somebody*.  *See* copyright registration information attached hereto as Exhibit 2.

21.     Like the Rick Astley song referenced above, it was clear that most, if not all, of the DMCA Notices were sent from senders who did not hold the rights to the works in question.

22.      Moreover, the DMCA Notices do not provide full information about the entity that sent the notice (and purportedly owns the work).  Rather, the names listed seem to be suspiciously obscure or are redacted entirely.

23.     Many of the DMCA Notices fail to even identify the copyright holder or the copyrighted material.  Rather, many DMCA Notices simply list one of the Websites and provide no additional meaningful information.  An example of such a DMCA Notice from the Lumen database is attached hereto as Exhibit 3.  A similar example, purportedly sent by an entity identified only as "Because Music" is attached hereto as Exhibit 4.  Clearly, these are sent to

---

[2] The selection of this particular song is more evidence that Defendants are intentionally harassing Plaintiffs, as this song is the basis for the long-time internet meme of "Rickrolling."  *See* https://en.wikipedia.org/wiki/Rickrolling.

harass Plaintiff and encourage Google to delist or downrank the Websites for no legitimate reason.

24. It is obvious that the copyright "owners," as listed in the DMCA Notices, are not actually the owners of the subject copyrights (to the extent that a copyrighted work is even referenced). Rather, it is suspected that many, if not most, of Defendants operate websites that compete with Plaintiff's Websites, and this is simply an attempt to have Google stamp out Defendants' competition.

25. On July 15, 2023, Plaintiff's counsel sent a cease-and-desist letter to multiple email addresses through which Plaintiff suspects that one or more of the Defendants submitted the fraudulent DMCA Notices.

26. On Monday, July 17, 2023, ostensibly in response to the cease-and-desist demand, a Defendant sent another fraudulent DMCA Notice sent to Google. This Defendant, cheekily, but in complete disregard and violation of United States law, sent a DMCA Notice to Google referencing the YouTube page of Ceelo Green's hit 2010 single, "F*** You!" A copy of this DMCA Notice from the Lumen database is attached hereto as Exhibit 5. Clearly, the cease-and-desist letter struck its target, receiving an unsubtle and churlish response. This provides even further evidence that the DMCA Notices are fraudulent and meant for no other purpose than to harass.

27. In addition to the foregoing deficiencies with the DMCA Notices herein described, the DMCA Notices also misrepresented that the Websites employ circumvention software banned by the DMCA. (For example, see Exhibits 1 and 5). The Websites do not employ such technology.

# COUNT I

## VIOLATIONS OF 17 U.S.C. §512(f) – All Defendants

28. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations contained in all the foregoing paragraphs as if fully set forth herein.

29. In the Defendants' DMCA Notices to Google, the Defendants falsely alleged that they own the copyrights, or they are the authorized representatives of the copyright owner, of the works cited in the DMCA Notices.

30. In fact, Defendants are not the copyright owners of the works cited in the DMCA Notices, nor are they the authorized representatives of the copyright owner of the works cited in the DMCA Notices.

31. The DMCA Notices to Google also falsely allege that the Websites' software implements anti-circumvention technology proscribed by the DMCA.

32. In fact, the Websites do not implement anti-circumvention technology proscribed by the DMCA.

33. Defendants misrepresented that the Websites violated copyright, despite the many non-infringing and fair uses of the Websites.

34. Defendants also knowingly made additional misrepresentations to Google in the DMCA Notices as described herein.

35. Google relied on the fraudulent DMCA Notices and delisted or downranked the Websites based on Defendants' misrepresentations, causing Plaintiff damages.

36. Defendants' misrepresentations to Google in the DMCA Notices caused Plaintiff to suffer damages and harm for which Defendants are liable.

## COUNT II

**Intentional Interference with Prospective Economic Advantage – All Defendants**

37. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations contained in all the foregoing paragraphs as if fully set forth herein.

38. Plaintiff had an economic relationship with the users of the Websites, because the more user traffic to the Websites, the greater the amount of advertising revenue that Plaintiff would receive.

39. Plaintiff also had an economic relationship with Google, because the better relationship it has with Google and its search platform, the greater traffic it would receive to its Websites.

40. Defendants knew about Plaintiff's economic relationship with the Websites' users and Google.

41. Defendants intentionally engaged in wrongful conduct to disrupt these economic relationships as described herein.  Specifically, Defendants knowingly sent false and fraudulent DMCA Notices to Google with the intent to cause Google to delist or downrank the Websites.

42. This wrongful activity indeed disrupted Plaintiff's economic relationship with its users and with Google because Google downranked or delisted some or all of the Websites.  This can be seen by the sudden drop in traffic to the Websites following Defendants sending the fraudulent DMCA Notices.

43. This wrongful activity has harmed and damaged Plaintiff and Defendants are liable for these activities.  Because of the reduced traffic to the Websites caused by Defendants fraudulent DMCA Notices, Plaintiff has, or will, receive reduced advertising revenue from the Websites.

# COUNT III

## California Unfair Business Competition Law Bus. and Prof. Code,

## §§ 17200 et seq., – All Defendants

44. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations contained in all the foregoing paragraphs as if fully set forth herein.

45. By Defendants conduct as set forth herein, Defendants have willfully or knowingly engaged in fraudulent, deceptive, unlawful, unfair, and/or other wrongful acts and practices.

46. Without limitation, Defendants' actions and omissions are, and have been, in violation of California Business and Professional Code §§ 17200, *et seq*.

47. As a result, Plaintiff has suffered harm and damages for which Defendants are liable.

### A JURY TRIAL IS DEMANDED ON ALL COUNTS SO TRIABLE

### REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court award the following:

1. Enter judgment for Plaintiff on all Counts of its Complaint;

2. Award Plaintiff its damages as determined at trial, at an amount of no less than $500,000, plus attorneys' fees, punitive damages, interest, and costs as provided by law;

3. Award Plaintiff its damages, costs, and attorneys' fees pursuant to 17 U.S.C. §512(f); and

4. Grant Plaintiff such other relief as this Court deems just.

        Respectfully Submitted,
        Plaintiff CreativeCode Ltd.
        By its attorney,

        _____
        Matthew Shayefar, Esq. (SBN 289685)
        Law Office of Matthew Shayefar, PC

Dated: July 31, 2023